**NEMO ASSOCIATES, INC., and Greg Kenwood and Roberta Kenwood**

v.

**HOMEOWNERS MARKETING SERVICES INTERNATIONAL, INC.**

**Civil Action No. 96–1764.**

United States District Court, E.D. Pennsylvania.

July 8, 1996.

Mitchell B. Gerson, Bensalem, PA, for plaintiffs Nemo Associates, Inc., Greg Kenwood, Roberta Kenwood.

Arthur L. Pressman, Abraham, Pressman & Bauer, P.C., Philadelphia, PA, for defendant Homeowners Marketing Services International, Inc.

## MEMORANDUM

PADOVA, District Judge.

Plaintiffs Nemo Associates, Inc. ("Nemo"), Greg Kenwood, and Roberta Kenwood bring this action against Defendant Homeowners Marketing Services International, Inc. ("HMSI"), alleging breach of contract, fraud in the inducement, and seeking invalidation of certain restrictive covenants contained in the parties' affiliation agreement.[1] Jurisdiction is based on diversity. Currently before the Court is Defendant's motion to transfer the case to the United States District Court for the Southern District of Florida. For the reasons that follow, Defendant's motion will be granted.

## I. BACKGROUND

HMSI, a Florida corporation, is a national franchisor of financial services targeted to the real estate industry. Nemo is a Pennsylvania corporation that sells HMSI products and has been a franchisee of HMSI since 1984. The Kenwoods are Nemo's principal shareholders and officers. Nemo last renewed its affiliation agreement with HMSI in 1994. The 1994 renewal incorporates by reference the terms of the earlier agreements.

Briefly stated, the allegations in Plaintiffs' Complaint are as follows. In the early 1990s, due to changing market conditions and alleged business errors by HMSI, the market for HMSI's products began shrinking. Because of this situation, and prior to signing the 1994 renewal of the franchise agreement,

---

1. An additional claim for violation of the Pennsylvania Unfair Trade Practices Act, 73 Pa.Stat. Ann. § 201–9.2 (West 1993), was dismissed by agreement of the parties.

Nemo sought assurances from HMSI regarding its financial condition. HMSI assured Nemo that it was financially sound. In reliance on this assertion, Nemo executed the 1994 renewal. In fact, HMSI was in severe financial difficulty.

In September of 1995, HMSI conducted an audit of Nemo. As a result of the audit, HMSI claimed that Nemo had failed to meet its required sales quotas and was therefore in arrears to HMSI in the amount of $83,-400.00. HMSI threatened to terminate the affiliation agreement if payment was not forthcoming. Plaintiffs assert that HMSI's actions constitute breach of contract because the demands for payment are barred by the affiliation agreement, and because HMSI previously misrepresented that Nemo would not be held responsible for the arrearages at issue. Nemo also alleges that the deficiencies are the direct result of HMSI's mismanagement and financial difficulty. Because Nemo refused to pay the monies demanded, HMSI terminated the affiliation agreement.

Plaintiffs filed their Complaint in the Pennsylvania Court of Common Pleas for Bucks County. Defendant removed the case to this court and subsequently filed its motion to transfer the case to the United States District Court for the Southern District of Florida. A hearing on the motion was held on May 7, 1996, and the issue is now ripe for disposition.

## II. STANDARD OF REVIEW

■ Defendant's Motion to transfer is brought pursuant to 28 U.S.C.A. § 1404(a) (West 1993). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is the appropriate statutory provision for transfer of an action when jurisdiction is proper in both the original and the requested forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.1995). The parties do not dispute the propriety of jurisdiction in Florida.

■ In ruling on a § 1404(a) motion, the court need not limit its analysis to the three factors stated in § 1404(a) (convenience of the parties, convenience of witnesses, or the interest of justice), but should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879. In this analysis, the plaintiff's choice of venue should not lightly be disturbed. *Id.*

The United States Court of Appeals for the Third Circuit has enumerated the following private and public interests that the court may consider in deciding whether to grant a motion to transfer:

> The private interests [include]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests [include]: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations and internal quotations omitted).

## III. DISCUSSION

Defendant's motion is based primarily on the terms of a forum selection clause contained in the affiliation agreement between the parties, and incorporated by reference into the 1994 renewal. The forum selection clause reads as follows:

> This Agreement shall be executed and deemed to be entered into and accepted in the State of Florida. The rights of the parties and provisions of this Agreement shall be interpreted, construed, and gov-

**1028**

erned in accordance with the laws of the State of Florida. By execution of this Agreement, Affiliate consents to the exercise over it of the general personal jurisdiction of the courts of record of the State of Florida. Both parties hereto agree that all causes of action and claims arising out of this Agreement (whether during or subsequent to the term hereof) shall be litigated only in the courts of record in the State of Florida, Counties of Broward and Dade or in the courts of record in the county where is located the principal place of business of HMSI, even though it may be otherwise possible to obtain jurisdiction over HMSI or Affiliate elsewhere.

Def's Mem.Ex. A at ¶ XIII.

■ A federal court sitting in diversity determines what effect to give a forum selection clause based on federal, not state law. *Jumara,* 55 F.3d at 877. A forum selection clause is treated as a manifestation of the parties' preferences as to forum. While not dispositive, a forum selection clause is entitled to substantial consideration. *Id.* at 880. Thus, "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.* Where the forum selection clause is valid, the party challenging the clause bears the burden of demonstrating why it should not be bound by its contractual choice of forum. *Id.*

■ A forum selection clause is *prima facie* valid "and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (internal quotation omitted). A forum selection clause is unreasonable where the resisting party can make a strong showing that the forum thus selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court or that *the clause* was procured through fraud or overreaching." *Foster v. Chesapeake Ins. Ltd.,* 933 F.2d 1207, 1219 (3d Cir.1991) (citations and internal quotations omitted) (emphasis added); *see also The Bremen,* 407 U.S. at 12–13, 92 S.Ct. at 1914–15;

*Wilson of Wallingford, Inc. v. Reliable Data Systems, Inc.,* No. 95–cv–6686, 1995 WL 734232, at *1–2 (E.D.Pa. Dec. 5, 1995) ("A federal court will generally enforce a forum selection clause unless the party seeking to avoid its enforcement shows that the clause was the result of fraud or overreaching"); *Nova Ribbon Products, Inc. v. Lincoln Ribbon, Inc.,* No. 89–cv–4340, 1992 WL 211544, at *4–6 (E.D.Pa. Aug. 24, 1992) (holding that under federal law, the party seeking to obviate the forum selection clause must prove that the inclusion of the clause was the result of fraud or coercion—fraud in the inducement as to the entire contract is not enough).

■ Plaintiffs argue that the forum selection clause is invalid because they were fraudulently induced to enter into the 1994 renewal based on Defendant's alleged misrepresentations. Plaintiffs claim that in the absence of such misrepresentations, they would not have entered into the agreement, or would have altered the forum selection clause in their favor. I find these arguments unpersuasive.

■ The cases cited above make clear that to invalidate a forum selection clause on the grounds of fraudulent inducement, the party challenging the clause must show that the clause itself was procured through fraud. Fraudulent inducement as to the entire contract will not invalidate an otherwise valid forum selection clause. Were the law otherwise, a party could defeat a validly negotiated forum selection clause merely by alleging fraud in the inducement. Plaintiffs' allegations of fraud relate to the execution of the 1994 renewal, not to the negotiation of the forum selection clause itself. Therefore, Plaintiffs have failed to overcome the presumption of validity of the forum selection clause.

■ Plaintiffs Greg and Roberta Kenwood argue that even if the forum selection clause is deemed valid as to Nemo, they are not personally bound by it because they signed the 1994 renewal only in their official capacity as officers of Nemo. The Kenwoods argue that the only provision that they executed in their individual capacity was a "joinder" which personally bound them to the

restrictive covenant contained in section 10 of the affiliation agreement.

I decline, at this juncture, to interpret the import of the Kenwoods' signatures on the joinder. Assuming *arguendo* that the Kenwoods are not personally bound by the forum selection clause, the balancing criteria of § 1404(a) lead me to conclude that the totality of the circumstances militate in favor of transferring the entire case to Florida. The factual allegations underlying all of the Plaintiffs' claims are closely related. Further, as the officers and principal shareholders of Nemo, the Kenwoods will almost certainly be material witnesses to the actions brought on behalf of Nemo. It would be a waste of private and judicial resources to allow the Kenwoods' claims to remain in this court while Nemo's claims are litigated in Florida. Such a duplication of effort is unnecessary and inappropriate.

I conclude that Plaintiff's general allegations of fraud are insufficient to invalidate the forum selection clause. I further conclude that transfer to Florida would not be so gravely difficult or inconvenient as to deny Plaintiffs their day in court. Accordingly, Defendant's motion will be granted.

An appropriate Order follows.

## ORDER

AND NOW, this 8th day of July, 1996, upon consideration of Defendant's Motion to Change Venue (Doc. No. 2), Plaintiffs' Response and submissions in support thereof (Docs. No. 3, 4), and Defendant's Reply (Doc. No. 7), and after a hearing held before me on May 7, 1996, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Change Venue is GRANTED;
2. The Clerk of the Court shall transfer this case to the United States District Court for the Southern District of Florida;
3. The Clerk of the Court shall mark this case CLOSED.